UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| KAREN SENG,<br><br>    Plaintiff<br><br>v.<br><br>ERIC K. SHINSEKI,<br>Secretary of Veteran Affairs,<br><br>SLOAN D. GIBSON,<br>Interim Secretary of Veteran Affairs,<br><br>and<br><br>DEPARTMENT OF VETERAN AFFAIRS,<br>    Defendants | CASE No. __3:14-CV-434-S_____ |

## COMPLAINT

## BACKGROUND

1.      This is an action to seek redress for the unlawful discrimination on the basis of disability that Defendants committed against Plaintiff. The Rehabilitation Act and the Americans with Disabilities Act expressly prohibit discrimination in employment on the basis of disability. See 29 U.S.C. §§ 701 *et seq*.; 42 U.S.C. §§ 12101, *et seq*.

2.      This action also seeks to redress the deprivation of rights for violations of the Family Medical Leave Act, in violation of 29 U.S.C. §§ 2611 and 2615.

1

## PARTIES

3. Plaintiff incorporates by reference, as set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Complaint.

4. Plaintiff is a resident of the United States and former program coordinator of the Community Residential Care Program for the Department of Veteran Affairs.

5. Eric K. Shinseki was the Secretary for the Department of Veteran Affairs at all relevant times. He resigned on or about May 30, 2014. He is sued in his official capacity.

6. Sloan D. Gibson is the Interim Secretary for the Department of Veteran Affairs. He is sued in his official capacity.

## JURISDICTION AND VENUE

7. Plaintiff incorporates by reference, as set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Complaint.

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

9. On July 3, 2013, Plaintiff filed a formal charge with the United States Equal Employment Opportunity Commission ("EEOC") against officials at the Robley Rex VA Medical Center in Louisville, Kentucky. Her claims were dismissed, and she was issued a notice of right to sue on March 12, 2014.

10. Venue in this Court is proper under 28 U.S.C. §1391.

## FACTUAL ALLEGATIONS

11. Plaintiff incorporates by reference, as set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Complaint.

12. Plaintiff worked for the Department of Veterans Affairs ("VA") for twenty-six years until her termination on May 14, 2013.

2

13. During the last four years of her tenure, Plaintiff was subjected to discrimination, harassment, and retaliation because of her disabilities.

14. In 2005, Plaintiff was hired to the Community Residential Care Program ("CRC") as the program coordinator.

15. Plaintiff built CRC from the ground up. She wrote the policy, developed assessments criteria for admission into the program, created the program handbook, recruited care facilities to accept veterans for the program, coordinated and completed inspections of those facilities, approved the facilities for participation in the program, monitored compliance for residential care of the veterans, and provided two annual comprehensive trainings seminars for the care providers. Plaintiff worked around the clock to get the program up and running.

16. Within two years, Plaintiff was selected to serve on the National Field Advisory Board and began working closely with the CRC central office located in Washington, D.C. As a result, Plaintiff spoke at several conferences and mentored other new coordinators in the CRC and the Medical Foster Home Program ("MFH").

17. For the first three years after its inception, Plaintiff managed a exemplary program that served as a model for other programs. Her templates were adopted nationally, she received national recognition, and she was invited to assist in the creation and roll out of the new national and local MFH.

18. Then the department was restructured and Gaila Taylor was promoted from Recovery Coordinator to Social Work Supervisor to oversee the four programs: CRC, Compensated Work Therapy, Healthcare for Homeless Veterans, and Mental Health Intensive Case Management Program ("MHICM").

19. Prior to Ms. Taylor's promotion, Plaintiff was directly under the then-Assistant Chief of Social Work Service, Connie Paynter. At that time, Plaintiff had her own office and unofficially had a flexible schedule.

20. Plaintiff's issues began when Gaila Taylor was promoted to Social Work Supervisor.[1]

21. Plaintiff suffers from attention deficit disorder, fibromyalgia, osteoarthritis, osteoporosis, bulging discs, and a rotator cuff tear.

22. Due to her disability, Plaintiff had trouble making it to work by the required 8:30 a.m. start time and completing her work within an eight-hour period.

23. While directly under Ms. Paynter, Plaintiff had a flexible schedule. She was not reprimanded for arriving a couple of minutes late and she stayed well past the end of her shift, worked at home, and on the weekends to complete her work.

24. After Ms. Taylor became Plaintiff's supervisor, Plaintiff was no longer allowed the flexible schedule she had when Ms. Paynter was her direct supervisor. Additionally, even though there were empty offices available, Plaintiff was forced to share an office with one of the CRC case managers, which distracted her from completing her work because of her ADD. Additionally, after Ms. Taylor became her superior, the program's office was moved approximately 45 miles away from Plaintiff's home so that Plaintiff had to travel an additional twenty to thirty minutes drive away from the prior office which also contributed to her tardiness.

25. When Plaintiff was late, she was charged AWOL.

---

[1] After the reorganization, Ms. Paynter was promoted to Chief of Mental Health and Behavioral Services.

4

26. Because Plaintiff was occasionally late and being charged AWOL, she requested a reasonable accommodation: a flexible schedule or a change in tour of thirty minutes.

27. Plaintiff requested an accommodation on numerous occasions. All of her requests were denied.

28. Plaintiff submitted at least two formal requests for reasonable accommodation to the Reasonable Accommodations Committee ("Committee").

29. Ms. Taylor was on the Committee.

30. Plaintiff's requested the flexible working schedule she had prior to Ms. Taylor taking over because she had trouble making it into the office by 8:30 a.m. due to her disabilities and also requested a Blackberry so that she could access email while out of the office. Her request was denied.

31. The Committee told Plaintiff that she did not submit enough information for them to determine whether she was an individual with a disability and that she should submit additional information, with which Plaintiff complied.

32. Her request was again denied.

33. Just after Plaintiff requested and was denied accommodation, Plaintiff received her first evaluation by Ms. Taylor and it was the worst one that she had received during her entire career with the VA. The evaluation contained inaccurate information and there was no supporting documentation. Ms. Taylor cited that there had been many complaints against Plaintiff; however, there was no evidence of any such complaints. Plaintiff objected to the evaluation.

34. On one occasion when Plaintiff made a request for reasonable accommodation, the CRC program was staffed by Plaintiff, who served as the coordinator, two case managers, and a program assistant.

35. Plaintiff requested a flexible working schedule and to have her own office again.

36. After Plaintiff made this request, but before the Committee had issued their final decision, one of the two case managers was removed from CRC and moved to MHICM. The position was not filled and Plaintiff was forced to cover the case manager's duties in addition to her own. The Committee then denied Plaintiff's accommodation request stating that the situation was resolved because the person who distracted her (the case manager with whom she shared an office) had been moved MHICM and now they could not provide her with an accommodation because it would cause an undue hardship for the VA because there was now only one case manager.

37. When the case manager was reassigned from CRC, Plaintiff subsumed all of her caseload. The other case manager did not take on any additional caseload and a replacement was not hired until Plaintiff was removed from the program. Plaintiff carried the case manager's caseload and performed her coordinator duties alone.

38. This caused extreme stress for Plaintiff and contributed to her inability to complete all assigned tasks.

39. Plaintiff was then faulted for not being able to perform both jobs. When she complained about not being able to complete her work, she was told that she was not completing two jobs and she was given no relief.

40. Plaintiff struggled with completing her duties and dealt with constant harassment from Ms. Taylor and the remaining CRC case manager, Vivian Turner.

41. After Plaintiff had disclosed her disabilities and requested accommodation, Ms. Turner yelled at Plaintiff, threw papers at her and told her, "There is something wrong with your brain. You don't think like everyone else." Even though Plaintiff reported this, nothing was done to curb the harassment.

42. Many of Plaintiff's informal requests for a flexible work schedule to Ms. Taylor as an accommodation went unanswered.

43. In one instance, the Union followed up for Plaintiff on a request for accommodation she had submitted to Ms. Taylor. Ms. Taylor erroneously told the Union that Plaintiff had filed a grievance and it had been resolved. No such action was taken.

44. Eventually, Plaintiff was required to check in when she got to work because Plaintiff was arriving a few minutes late.

45. At first she was told to report to two other program coordinators when she arrived; however, the policy was changed after Plaintiff complained about having to report to her peers.

46. Then Plaintiff was told that she had to call Ms. Taylor.

47. Plaintiff would be docked for time when she was on campus meeting with other people but not her workstation by 8:30 a.m.

48. Oftentimes, even though she was on the worksite, Plaintiff was reprimanded and charged AWOL (absent without leave) because Ms. Taylor had not physically seen her yet.

49. On one occasion, Plaintiff was at a facility conducting an inspection and had been working since her scheduled time; however, she did not see Ms. Taylor until midday. Ms. Taylor told Plaintiff that she would be docked until the time that Ms. Taylor saw her that day because she had not seen her before then and did not know she was working. Ms. Taylor refused to listen to other staff that had been present and working beside Plaintiff that morning.

50. Plaintiff was later told to report in to Walter Barnett, who would locate the proper manager to "check-in" the Plaintiff. Mr. Barnett was forced to stop his work and track down a manager. Sometimes there was a delay in locating the proper manager and Plaintiff was docked AWOL for the time spent trying to locate a manager even though she was present and ready to work. Mr. Barnett was told because the manager did not see her she was AWOL.

51. Under the VA's policies, time was kept in fifteen-minute increments. If Plaintiff was one minute late, she was charged for being fifteen minutes late. If she was sixteen minutes late, then she was charged thirty minutes. Plaintiff was consistently charged with AWOL even though she was actually present and working.

52. This process was humiliating for Plaintiff she was the only one made to check in and everyone knew that she was required to do so.

53. Unlike Plaintiff, the other coordinators were not questioned if they came in late.

54. No other coordinator was required to report their start time.

55. In 2011, after her requests for accommodation had been denied, Plaintiff was given a letter of instruction regarding the need for her to be at her workstation on time.

8

56. Plaintiff received two more letters of instruction the next year. Plaintiff again requested accommodation, but it was denied.

57. In 2012, Plaintiff requested to take FMLA leave to cover the time that she was late as a result of dealing with her disabilities and dealing with her son, who also has disabilities.

58. Plaintiff was told that she needed to provide more documentation, with which she complied.

59. In September of 2012, Plaintiff submitted the additional requested information for FMLA.

60. Plaintiff never received a final decision regarding her FMLA leave, she was often not allowed to use the FMLA leave, and she was charged AWOL instead.

61. For instance, Plaintiff called in to Ms. Taylor and asked to use FMLA because she was having a difficult with son that morning as a result of his disability. Ms. Taylor told Plaintiff that she had not provided enough information and asked for further explanation, which was provided by Plaintiff. Ms. Taylor never responded and Plaintiff was not allowed to use FMLA. Instead, she was charged AWOL.

62. Other employees were given the opportunity to use sick leave, annual leave, FMLA leave, or leave without pay.  Plaintiff was only charged AWOL.

63. Finally, Plaintiff filed a union grievance against Ms. Taylor for the harassment she had endured.

64. Approximately one week later, Plaintiff was "temporarily" reassigned.

65. On or about May 7, 2012, after Plaintiff arrived to work, Ms. Taylor pulled Plaintiff out of her office for reassignment. Plaintiff was unable to complete any of the work

she had been working on. Ms. Taylor later used Plaintiff's unfinished work as a reason for her termination.

66. Plaintiff then met with Ms. Paynter regarding step two of her grievance.

67. Within a few days after her grievance meeting, Ms. Paynter informed Plaintiff that she would be permanently reassigned.

68. Plaintiff was moved into a newly created position. For thirty days, Plaintiff was not given a job description.

69. Plaintiff was told by Ms. Paynter this was not a disciplinary action and she was not being harmed because she was still a coordinator and received the same pay.

70. However, she was not allowed to perform any coordinator duties and performed only data entry.

71. Plaintiff was the only coordinator that did not have her own office, she was prohibited from having patient contact, she was not included on correspondence, and she was not allowed to attend clinical training with the other coordinators.

72. Through her reassignment, Plaintiff was moved to a small office shared by 5 people where everyone had disability or was perceived to have a disability. It was referred to as the "misfit" room.

73. One coworker had ADD, another was confined to a wheelchair, the peer support specialist by definition had a mental health and/or co-occurring condition and was engaged in recovery, and yet another colleague was referred to as "odd."

74. Plaintiff was not allowed her chair that had been issued because of her back problems nearly a decade earlier.

10

75. Even though she was removed from the CRC program, she was still forced to report her arrival time at work.

76. Each morning, Plaintiff had to track down a member of management and was not considered "clocked-in" until a member of management physically saw her.

77. Ms. Paynter required that a meeting be interrupted and Plaintiff had to step into the room to "check-in" in front of six to eight colleagues. Mr. Barnett attempted to relay to Ms. Paynter that Plaintiff was there, but Ms. Paynter required Plaintiff to peer around the corner into the meeting room so that she could physically see her.

78. This process was degrading and humiliating.

79. Plaintiff was made to feel isolated and was shunned by her peers for fear of association.

80. Plaintiff was treated differently from her peers.

81. Another employee requested to come in at 9:00 a.m. and she was allowed to do so. This was the exact accommodation Plaintiff had requested and was denied.

82. One employee was routinely tardy and she was not subjected to the same treatment as Plaintiff. She was not forced to walk the "Hall of Shame" to check in with management as Plaintiff was required to do.

83. Plaintiff applied for several positions after her removal from the CRC program; however, she was not selected for hire even though she was more than qualified for the position.

84. Plaintiff's prior position as coordinator of the CRC was reposted and allowed for a flexible schedule.

85. Tardiness is a common weakness for people afflicted with her disabilities and Plaintiff's supervisors and coworkers targeted her because of it.

86. As a result of the harassment, Plaintiff's symptoms increased. She developed increased anxiety and would have panic attacks when she was running a few minutes behind. She had trouble sleeping and her legs would swell.

87. Plaintiff was eventually terminated for failure to perform duties, making inaccurate statements in a patient's medical record, failure to follow instructions, and for unauthorized absences (AWOL).

## COUNT I: VIOLATION OF THE REHABILITATION ACT

88. Plaintiff incorporates by reference, as set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Complaint.

89. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

90. The VA is an executive agency to which Section 504 of the Rehabilitation Act applies.

91. Attention deficit disorder, fibromyalgia, bulging discs, and a rotator cuff tear substantially limit at least one of Plaintiff's major life activities; thus, Plaintiff is an individual with a disability under the Rehabilitation Act.

92. Plaintiff was fully qualified to be coordinator of the CRC and was able to perform all the necessary functions of the position with reasonable accommodation.

93. Plaintiff requested reasonable accommodation on several occasions, which was denied.

94. Plaintiff was then removed from her position and ultimately terminated.

95. Plaintiff applied for other position; however, she was not selected for hire.

96. During her tenure, Plaintiff was the subject of discrimination, harassment, and retaliation as a direct result of her disability in violation of Section 504 of the Rehabilitation Act.

97. As a result of the VA's actions, Plaintiff has suffered harm and sustained damages.

## COUNT II: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

98. Plaintiff incorporates by reference, as set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Complaint.

99. The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

100. Because attention deficit disorder, fibromyalgia, bulging discs, and a rotator cuff tear substantially limits at least one of Plaintiff's major life activities, Plaintiff is an individual with a disability under the ADA.

101. Plaintiff was fully qualified to be coordinator of the CRC and was able to perform all the necessary functions of the position with reasonable accommodation.

102. Plaintiff requested reasonable accommodation on several occasions, which was denied.

103. Plaintiff was then removed from her position and ultimately terminated.

104. During her tenure, Plaintiff was the subject of discrimination, harassment, and retaliation as a direct result of her disability in violation of the ADA

105. As a result of the VA's actions, Plaintiff has suffered harm and sustained damages.

### COUNT III: VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

106. Plaintiff incorporates by reference, as set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Complaint.

107. The Plaintiff was an eligible employee with respect to rights given under the Act, pursuant to 29 U.S.C. § 2611(2)(A)(i), having been employed by Defendants for a time greater than twelve months.

108. The Defendant is an "employer" under the Family and Medical Leave Act, pursuant to 29 U.S.C. § 2611(4)(A).

109. As set forth above, Defendants interfered with, restrained, and/or denied Plaintiff's exercise and/or attempt to exercise her rights under the Family and Medical Leave Act, in violation of 29 U.S.C. 2615(a)(1).

110. Defendants retaliated against the Plaintiff in violation of 29 U.S.C. 2615(a)(2); 2615(b).

111. As a direct and proximate result of said aforesaid conduct of Defendants, the Plaintiff suffered injury including, but not by way of limitation, past, present, and future

mental and emotional distress, past, present and future medical expenses, lost wages and benefits, and the future impairment of the power to labor and earn.

WHEREFORE, Plaintiff respectfully requests a Judgment in favor of Plaintiff and against Defendants and the following relief:

a. Back pay in an amount to be determined at trial;

b. Reinstatement;

c. In the event reinstatement is not granted, front pay;

d. Compensatory and consequential damages;

e. Pre and post judgment interest at the highest amount allowable by law;

f. Attorneys' fees and costs of this action;

g. For a trial by jury on all issues so triable; and

h. Any and all other relief to which she may be entitled.

Respectfully submitted,

*/s/ Mellissa Eyre Yeagle*
MELLISSA EYRE YEAGLE
101 Meidinger Tower
462 South Fourth Street
Louisville, KY  40202
(502) 561-2005
mellissa.yeagle@gmail.com

and

Daniel J. Canon
CLAY DANIEL WALTON & ADAMS PLC
101 Meidinger Tower
462 South Fourth Street
Louisville, KY  40202
(502) 561-2005
dan@justiceky.com

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Karen Seng

**DEFENDANTS**
Eric K. Shinseki and Sloan D. Gibson, Department of Veteran Affairs

**(b)** County of Residence of First Listed Plaintiff: Jefferson
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Daniel J. Canon, Clay Daniel Walton & Adams, PLC
462 S. 4th St., Ste. 101, Louisville, KY 40202

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 340 Marine | | | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment / ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education / ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 USC 794, 42 USC 12112, 29 USC 2615

Brief description of cause:
Discrimination and retaliation under Rehabilitation Act, ADA, FMLA

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
**DEMAND $** 800,000.00
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____
DOCKET NUMBER _____

DATE: 06/10/2014
SIGNATURE OF ATTORNEY OF RECORD: Mellissa Eyre Yeagle

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

_____ District of _____

| | ) |
|---|---|
| *Plaintiff(s)* | ) ) ) ) ) |
| v. | ) Civil Action No. |
| | ) ) ) ) ) ) |
| *Defendant(s)* | ) |

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)*




A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:




If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.


*CLERK OF COURT*


Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

# PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify)*:

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

_____ District of _____

|  |  |
|---|---|
| *Plaintiff(s)* | ) ) ) ) ) ) |
| v. | ) Civil Action No. ) ) |
| *Defendant(s)* | ) ) ) ) ) |

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

# PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

❐ Other *(specify):*
_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: