# EXHIBIT 4

# DEPARTMENT OF VETERANS AFFAIRS

# Memorandum

Date:   May 28, 2013

From:   Medical Center Director (00)

Subj:   Third-Step Grievance

To:     President, AFGE Local 1133

1.   This is in response to your grievance dated May 14, 2013, regarding Social Worker Karen Seng's sustained removal decision.  Please be advised that I have given full and careful consideration to the information developed in the matter giving rise to this grievance, including the information provided by you during our meeting on May 20, 2013.

2.   In your grievance, you contend that the Agency and its Agents, without justification, removed Ms. Seng from federal employment.  Your grievance also claims that when Ms. Seng was the Community Residential Care (CRC) Program Coordinator, she was expected to perform her assigned duties, along with those of a vacated Case Worker position.  You further contend leadership in Mental Health and Behavioral Sciences Service (MH&BSS) was fully aware of this staffing deficit and was fully aware that Ms. Seng was in need of assistance, yet the service failed to address the situation.  Your grievance further goes on to state that the Agency was aware Ms. Seng and her son both suffered from disabilities; however, her reasonable accommodation requests, as well as her leave requests under the Family Medical Leave Act (FMLA) and care and bereavement (CB), were disapproved.  You contend that because MH&BSS disapproved Ms. Seng's leave requests, she was subsequently charged with unauthorized absence (AWOL).  The grievance also claims Ms. Seng has suffered great tribulation and stress because of MH&BSS management's continual harassment, hostile work environment, and unfair treatment.  In submission, AFGE is claiming that the Agency and its Agents are in violation of the following articles of the Collective Bargaining Agreement (C.B.A.):

   a.   Article 14;

   b.   Article 17;

   c.   Article 35; and

   d.   Any and all other relevant articles, laws, regulations, customs, and past practices not specified herein.

3.   As resolution to your grievance, you have requested the following on Ms. Seng's behalf:

   a.  For the employee to be reinstated with full benefits;

   b.  For the Agency to pay the employee any lost wages;

   c.  For the employee's seniority to remain unchanged;

d. For the employee's disciplinary record to be expunged;

e. For the employee's tour of duty to be adjusted to accommodate her circumstances;

f. For the practice of harassment and intimidation to cease;

g. For the employee to be made whole; and

h. For the Agency to agree to any and all other remedies appropriate in this matter.

4. Based on my thorough review of the file, my discussion with you, and my subsequent review of all additional documentation and information provided, I have determined that the decision to remove Ms. Seng was warranted for the following reasons:

a. Prior to rendering my final decision on Ms. Seng's proposed removal, dated March 7, 2013, both her March 27, 2013, written reply and April 5, 2013, oral reply, along with the subsequent information provided to me on May 1, 2013, regarding the additional evidence submitted to AFGE on April 24, 2013, were given bona-fide consideration. In addition, a thorough Douglas Factors analysis was conducted. In that analysis, I considered all possible mitigating factors, such as Ms. Seng's long-term federal employment, her on-the-job performance, and the fact that this action was considered a "first offense." I weighed those against the aggravating factors, specifically the nature and seriousness of the offenses, the impact of the offenses on her supervisor's confidence in her to perform assigned duties, the clarity with which she was on notice regarding the policies violated, and her potential for rehabilitation. Based on the sustained charges (i.e., Failure to Perform Assigned Duties, Making Inaccurate Statements in a Patient's Official Medical Record, Failure to Follow Instructions, and Absent Without Leave [AWOL]) and the several overriding aggravating factors, I concluded a removal decision was appropriate, within the range of reasonableness, and consistent with the VA Table of Penalties. Furthermore, despite receiving the proposed removal, Ms. Seng did not demonstrate the propensity to report to work as scheduled, as evidenced by further AWOLs due to her tardiness.

b. In your grievance, you stated that Ms. Seng was inappropriately denied assistance she needed when the Agency and its Agents failed to fill a position that was necessary so that the CRC Program could continue to be successful. I should point out that my review of the file revealed that Ms. Seng's failure to perform her assigned duties (i.e., ensure that each resident and sponsor was visited at least monthly) predates the employee leaving the CRC Program.

c. It is also my understanding that Ms. Taylor instructed Ms. Seng to discontinue adding new patients or patients outside the catchment area in order to lessen the workload and that her primary objections centered around changing the nature of her duties. It is also my understanding that after Ms. Taylor notified Ms. Seng of the redistribution of work, it was only then that Ms. Seng made Ms. Taylor aware of her concerns regarding staffing and workload. However, Ms. Seng did not identify to her any specific program or compliance issues that were being neglected due to the alleged staffing shortage. Additionally, although Ms. Seng may not have agreed with Ms. Taylor's delegation of duties, it was still within the rights of management to assign work and to determine the personnel by which the work was to be performed.

d. Due to continual issues concerning reporting for work as scheduled, Ms. Seng was issued letters of instruction on August 12, 2011, and again on October 11, 2012, which I understand were provided to her in private. Additionally, it is a standard practice of this Agency to instruct employees to check in with their supervisor, or designee, when that employee exhibits an inability to report for duty as scheduled.

e. Although you contend in the grievance that MH&BSS leadership worked diligently to charge Ms. Seng AWOL in order to bolster the removal, I do not agree with that perspective. For example, the multiple letters of instruction demonstrate to me a service that used numerous methods in an attempt to correct this employee's behavior, rather than just to punish her. Per the *Facility Code of Conduct*, "All employees are required to be at work every day as scheduled unless on approved leave or excused absence." Per our May 20, 2013, meeting, I will ensure MH&BSS is holding all employees to this standard.

f. Ms. Seng's reasonable accommodation requests went before the Reasonable Accommodation Committee (RAC), which consists of both management and labor representatives. Based on the RAC's decisions, it was determined that she did not meet the legal definition of an individual with a disability; therefore, her requests were disapproved.

g. Ms. Seng's service did provide her with a tour change (from 8:00 a.m. - 4:30 p.m. to 8:30 a.m. - 5:00 p.m.) because of the personal reasons specified in the grievance. However, despite these efforts, Ms. Seng continued to have attendance issues (i.e., tardiness). In addition, there is no operational need for a 9:00 a.m. - 5:30 p.m. tour of duty. The employee did not provide any valid business reason for being allowed to work 9:00 a.m. - 5:30 p.m., other than she would not be "as late."

h. As Medical Center Director, I agree that managers should excuse, without charge to leave, tardiness/absences that are brief, infrequent, and for good cause, per the C.B.A. I also believe that leave should be granted for appropriate absences. Based on the available evidence, it is apparent that Ms. Seng has had periods of tardiness that were excused/ approved without charge to leave, and others where she was allowed to take leave. I also believe that Ms. Seng's service has approved/disapproved leave under FMLA and CB appropriately.

i. The rationale behind the decision to remove Ms. Seng was not solely based on her multiple AWOL charges and failure to follow instructions. Those two charges together, along with more egregious charges of *failure to perform assigned duties* and *making inaccurate statements in a patient's official medical record*, were the basis for the removal.

4. Therefore, I find no violations of the C.B.A. and your requested relief is denied. As stated in the letter of removal received on May 7, 2013, Ms. Seng's removal will stand.

5. I also want to make you aware that because Ms. Seng filed a complaint with the Equal Employment Opportunity Commission (EEOC) on this very matter, and prior to this grievance's filing, the Agency considers Ms. Seng to have exercised her rights under EEO. Thus, the Agency asserts that the matter giving rise to this grievance is *non-grievable*, per Article 43 of the C.B.A.

6. This notice constitutes a reply at the third step. In accordance with Article 43, Section 7, of the Master Agreement between the Department of Veterans Affairs and the American Federation of Government Employees, this is considered the final agency decision.


Wayne L. Pfeffer, MHSA, FACHE


I acknowledge receipt of the original and one copy of this third-step grievance response dated May 28, 2013:

_____          28·MAY·13
Signature                          _____
                                   Date

OO
003
05

| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES 800 ZORN AVENUE LOUISVILLE, KENTUCKY 40206 GRIEVANCE FORM | |
|---|---|
| LOCAL 1133 | LOCAL 1133 |

(502)-287-5032

(502) 287 - 6293

**EMPLOYEE JOB TITLE:** Social Worker

**EMPLOYEE NAME:** Karen Seng

**ADDRESS:** 800 Zorn Ave

**CITY:** Lou   **STATE:** Ky   **ZIP:** 40206

**SUPERVISOR'S NAME:** Wayne Pfeffer Director

**TODAY'S DATE:** 5/14/13

**WORK PHONE:** NA

**HOME PHONE:** NA

**GRIEVANCE DATE:** 5-14-13

**REPLY DATE:** 5-28-13

**OFFICE USE:**

**GRIEVANCE STATEMENT BY COMPLAINANT:**

See Attached

**CORRECTIVE ACTION REQUESTED:**

**OFFICE USE:**

See Attached

I HEREBY GIVE COMPLETE AUTHORITY TO A.F.G.E. LOCAL 1133 AND ITS DELEGATED REPRESENTATIVES TO PRESENT, NEGOTIATE, AND BARGAIN REGARDING THIS GRIEVANCE, AND I SHALL BE BOUND BY THE DISPOSITION MADE BY THE UNION OF SUCH GRIEVANCE.

**COMPLAINANT'S SIGNATURE:** Karen Seng

**DATE:** 5/14/13

ADDITIONAL INFORMATION MAY BE PLACED ON REVERSE SIDE AND ATTACHED HERETO.

Standard Form 50
Rev. 7/91
U.S. Office Personnel Management
FPM Supp. 6-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | | | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|---|---|
| SENG, KAREN R | | | [Redacted] | [Redacted] | 5/14/2013 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code 357 | 5-B. Nature of Action TERMINATION | 6-A. Code | 6-B. Nature of Action |
| 5-C. Code V8V | 5-D. Legal Authority 38 U.S.C., CH. 74 | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number SOCIAL WORKER 000000 | 15. TO: Position Title and Number |
|---|---|

| 8. Pay Plan GS | 9. Occ. Code 0185 | 10. Grade or Level 12 | 11. Step or Rate 08 | 12. Total Salary $84,863 | 13. Pay Basis PA | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12A. Basic Pay $74,337 | 12B. Locality Adj. $10,526 | 12C. Adj. Basic Pay $84,863 | 12D. Other Pay $0 | | | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay | | |

| 14. Name and Location of Position's Organization VA MEDICAL CENTER MENTAL HEALTH & BEHAVIORAL SCIENCES SVC LOUISVILLE KY | 22. Name and Location of Position's Organization |
|---|---|

### EMPLOYEE DATA

| 23. Veterans Preference 1 | 0 – None  1 – 5-Point  2 – 10-Point/Disability  3 – 10-Point/Compensable  5 – 10-Point/Other  6 – 10-Point/Compensable/30% | 24. Tenure 1 | 0 – None  1 – Permanent  2 – Conditional  3 – Indefinite | 25. Agency Use | 26. Veterans Preference for RIF YES  X  NO |
|---|---|---|---|---|---|
| 27. FEGLI E5 | BASIC + OPTION C (5X) | 28. Annuitant Indicator 9  NOT APPLICABLE | | | 29. Pay Rate Determinant 0  REGULAR RATE |
| 30. Retirement Plan K  FERS & FICA | | 31. Service Comp. Date (Leave) 2/22/1988 | 32. Work Schedule F  FULL-TIME | | 33. Part-Time Hours Per Biweekly Pay Period |

### POSITION DATA

| 34. Position Occupied 2 | 1 – Competitive Service  2 – Excepted Service  3 – SES General  4 – SES Career Reserved | 35. FLSA Category E | E – Exempt  N – Nonexempt | 36. Appropriation Code 8221.2134 | 37. Bargaining Unit Status 1276 |
|---|---|---|---|---|---|
| 38. Duty Station Code 21-2090-11 | | 39. Duty Station (City – County – State or Overseas Location) LOUISVILLE KY | | | |

| 40. Agency Data 603 | 41. | 42. | 43. | 44. |
|---|---|---|---|---|

**45. Remarks**

FORWARDING ADDRESS: [Redacted]
REASON(S) FOR SEPARATION: FAILURE TO PERFORM ASSIGNED DUTIES; MAKING INACCURATE STATEMENTS IN A PATIENT'S
OFFICIAL MEDICAL RECORD; FAILURE TO FOLLOW INSTRUCTIONS; AND UNAUTHORIZED ABSENCE (AWOL).
NOT ENTITLED TO SEVERANCE PAY.
LUMP SUM PAYMENT TO BE MADE FOR ANY UNUSED ANNUAL LEAVE.
SALARY INCLUDES A LOCALITY-BASED PAYMENT OF 14.16%.
HEALTH BENEFITS COVERAGE IS EXTENDED FOR 31 DAYS DURING WHICH YOU ARE ELIGIBLE TO CONVERT TO AN
INDIVIDUAL POLICY (NONGROUP CONTRACT).

| 46. Employing Department or Agency DEPARTMENT OF VETERANS AFFAIRS | 50. Signature/Authentication and Title of Approving Official ANGELA DUTTON |
|---|---|
| 47. Agency Code VA TA | 48. Personnel Office ID 1557 | 49. Approval Date 5/14/2013 | HUMAN RESOURCES OFFICER ELECTRONICALLY SIGNED |

5-Part 50-31

2 - OPF Copy - Long-Term Record - DO NOT DESTROY

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

Date: May 13,2013

To: Wayne Pfeffer, Director

From: AFGE on Behalf of Karen Seng

Ref; Third Step Grievance



1. This grievance is filed on behalf of Karen Seng by the exclusive representative AFGE Local 1133. We contend on behalf of the complainant that she was treated unfairly by the Agency and its representative's when she received a sustained removal. We further contend that Ms Seng has 26 years of dedicated service to the veteran patient and during that time period she was never disciplined .A clear <u>Violation of Article 14 of the Collective Bargaining Agreement that reads in part..... The parties also agree to the concept of progressive discipline.</u>

2. As the Program Coordinator of the CRC program Ms. Seng was expected to complete the duties of the coordinator position while completing the work of another CRC position that was vacated approximately two years ago. Mental health Service was aware that this essential position was vacant however, the service madeno attempt to fill it behind the employee that left. When Ms. Seng questioned her supervisor about help so the program could remain successful she was told that she would have to pick up those extra duties. However, the supervisor knew that one person could not fulfill the role for two employees therefore Ms. Seng was set up for failure by her supervisor.... <u>Violation of Article 17 of the Collective Bargaining Agreement that reads in part.... Be afforded assistance and told of expectations by the Department to enable them to perform their jobs.</u> Therefore, the union's issue of contention is Ms. Seng was inappropriately denied any assistance she needed when the Agency and its Agents failed to fill a position that was necessary so that the CRC program could continue to be successful and that assistance was denied per the management of Mental Health. In addition the management of Mental Health should be held accountable too since it is their responsibility to ensure that all the programs under the jurisdiction of Mental Health are in compliance in with VA Regulations and Processes.

3. Ms. Seng was required to check in with Mental Health every day before her workday could begin. She was forced by the management team of Mental Health to walk the hall of shame where she was required to check in with certain management officials before her workday could begin causing her public embarrassment and humiliation on an on-going and daily basis. <u>A clear violation of Article 17 of the Collective Bargaining Agreement that reads in part.....Instructions will be given in a reasonable and constructive manner . Such guidance will be provided in an atmosphere that will prevent public embarrassment or ridicule.</u> No other employees assigned under the management team of Mental Health were required to check in with management officials before their workday could begin. As a matter of fact another Mental Health employee came in on an almost daily basis tardy and she was not subjected to the same treatment as Ms Seng. This employee was not required to check in neither was she subjected to the walk of the " Hall of Shame " as Ms Seng was. The union contends that not only was Ms. Seng treated unfairly

by the Agency and its Agents. The Agency exhibited disparate treatment toward her in comparison to another Mental Health employee. A clear Violation of Article 17 of the collective Bargaining Agreement that reads in part... 'All employees shall be treated fairly and equitably. The union further contends that the management officials of Mental Health have worked hard and diligently to bring AWOL charges against Ms. Seng in an effort to spice up and then add support to her removal.

4. Mental health Management were well aware that Ms Seng and her dependent child both suffer from a disability and that too is supported by medical documentation from her Physician. In an effort to support her request for a change in tour of duty Ms. Seng requested reasonable accommodation, that was denied by the Agency. When Ms. Seng then requested FMLA to assist with the periods of tardiness due to their disability she was charged with AWOL instead. This happened repeatedly. For the record it should be considered that Ms. Seng first requested Care and Bereavement leave which was also denied by the managers of Mental Health and then used by the same managers to charge Ms Seng with AWOL. A clear Violation of Article 35 of the Collective Bargaining Agreement that reads in part ... 'Provides care for a family member who is incapacitated by a Medical or Mental condition.'

5. In addition Mental Health management nor the Agency followed the regulations that were required of the CRC program. The union has researched and determined that the Agency and its Agents were in direct violation of VHA Directive 2009-001....when they made changes to the CRC program without following the regulations that read in part....It is VHA policy that all proposals requiring restructuring, reduction or augumentation of major clinical programs or services from the VISN Director for non- mandated VHA programs , must be approved by the Under Secretary of Health , or designee,through the Deputy Under Secretary of Health for Operations and Management . When Mental Health Management decided not to fill the position referenced in paragraph 2 they did not follow the policy referenced above.

6. As the Chief of Mental Health Ms Paynter is not even aware of how many years Ms. Seng has served as a VA employee and she also misquoted her correct performance appraisal . Both of these can be found in the Douglas Factor comments made by Ms Paynter. There is no mention that Ms Seng has received National recognition for her contribution to the CRC program. Ms Seng has suffered great tribulation and stress as a result of managements continued harassment , hostile work environment and unfair treatment. As the exclusive representative we charge the Agency with violations of the above noted violations of the CBA or any and all other relevant articles, laws, regulations ,customs and past practices not specified herein.

7. **Resolution:** Employee will be reinstated with full benefits. Any benefits lost will be made whole to employee. Any lost wages will be paid in full by the Agency. Seniority will remain unchanged. Employee disciplinary record will be expunged. Tour of duty will be adjusted to accommodate circumstances. Employee will be made WHOLE. To agree to any and all other remedies appropriate in this matter