# EXHIBIT 9



**DEPARTMENT OF VETERANS AFFAIRS**
OFFICE OF RESOLUTION MANAGEMENT
2002 Holcombe Boulevard
Building 110
Houston, TX 77030

MAR 12 2014                                    In reply refer to: 08N

VIA: E-mail

Wayne L. Pfeffer
Director (603/00)
Robley Rex VA Medical Center
800 Zorn Avenue
Louisville, KY 40206

**SUBJECT: Notice of Dismissal of EEO Complaint for Karen Seng, Case No. 2004-0603-2013102286, Filed on July 3, 2013**

1. This is to inform you that the EEO Complaint of Karen Seng, filed on July 3, 2013 has been dismissed.

2. Enclosed is a copy of the decision letter that was sent to the complainant. All documents and records related to this complaint must be maintained at the facility in the event that the complainant appeals the dismissal. I have enclosed a document explaining what you can expect should the complainant appeal this decision.

3. Should you have any questions, please contact Eleanor K. Wilson, EEO Case Manager, at (501) 257-1589.

Sincerely,

*Rodger L. Evans*
RODGER L. EVANS
Regional EEO Officer

Enclosure:   Dismissal Letter

cc: Ruby Leverson, EEO Program Manager (via electronic mail)

Page 2
Name of Addressee

### WHY DID I RECEIVE THIS NOTICE?

You received the *Notice of Dismissal* because an employee, applicant, or former employee under your chain of command filed a complaint and ORM reviewed it and determined it failed to meet the Equal Employment Opportunity Commission's (EEOC) procedural requirements for investigation. We have copied your EEO program manager/liaison.

### WHAT ACTIONS SHOULD I TAKE?

You must direct staff to continue to preserve all documents related to the complaint, as the complainant may file an appeal with the EEOC. That process is described below.

### WHAT HAPPENS IF THE COMPLAINANT APPEALS THE DISMISSAL?

The complainant has 30 days to appeal ORM's dismissal to the EEOC's Office of Federal Operations. EEOC will render a decision either affirming the decision or reversing it and remanding it back to ORM for processing. We will advise you if that occurs.

### DOES THE COMPLAINANT HAVE ANY OTHER RECOURSE?

Yes, the employee can also file in U.S. District Court. If that occurs Regional Counsel works with a U.S. Attorney from the Department of Justice.



**DEPARTMENT OF VETERANS AFFAIRS**
**OFFICE OF RESOLUTION MANAGEMENT**
**2002 Holcombe Boulevard**
**Building 110 Houston TX 77030**

MAR 12 2014

In reply refer to: 08E

VIA: United Parcel Service

Karen Seng
Redacted
Redacted

**SUBJECT: Notice of Final Agency Decision of your EEO Complaint Number 2004-0603-2013102286, Filed July 3, 2013, against officials of the Robley Rex VA Medical Center in Louisville, KY**

1. The purpose of this letter is two-fold.  First to rescind our Notice of Partial Acceptance dated October 8, 2013, and second, to issue a Final Agency Decision in this case.

2. On March 18, 2013, you initiated contact with an EEO counselor.  Counseling concluded on June 13, 2013, when you were mailed the Notice of Right to File a Discrimination Complaint, which you received on June 21, 2013.  On July 3, 2013, you filed a formal complaint of discrimination, VA Form 4939.

3. The complaint file reflects that you included parental status (your son's disability) as one of the basis for your EEO complaint.  In your complaint, you alleged you were discriminated against based on your association with a disabled person (your son) when you did not receive a response to your reasonable accommodation request; you were charged absence without leave; and when you were removed from Federal employment.

EEO regulation 29 CFR §1614.107(a)(1) provides, in part, that the "agency shall dismiss a complaint or portion of a complaint that fails to state a claim under Section 1614.103..."  Complainants fail to state a claim when "...3) they fail to allege a basis of discrimination (i.e. race, sex, age, national origin, sex, color, religion, disability, and reprisal - for prior EEO activity, genetic information) that falls within the purview of EEO law and regulations..."  Parental status does not fall under the purview of EEO law.  Therefore, parental status is **DISMISSED** as a basis for this complaint.

4. During the counseling period, you raised five claims and indicated the events were based on age, disability, and race (White).  The first allegation occurred in January 2012, when your request for reasonable accommodation was denied.  The last allegation occurred on May 7, 2013, when you received a proposed removal.

Page 2
Notice of Final Agency Decision
Karen Seng
Case No: 2004-0603-2013102286

5.  In attachments to the formal complaint, you raised 10 additional allegations, not raised during counseling.[1]  The first allegation occurred on June 11, 2009, when you received a lower performance rating than in previous years.  The last allegation occurred on April 11, 2013, when your supervisor falsely accused you of filing a grievance concerning your request for family medical leave.

6.  In an amendment request submitted on November 26, 2013, you raised 63 additional allegations, which you wanted included in your EEO complaint.  The first allegation occurred in October 2008, when your supervisor disagreed with the selectee you chose to fill a vacant position.  The last allegation occurred from May 2012 to May 2013, when you were charged more leave than you used and charged tardy when you were on duty on time.

7.  The Equal Employment Opportunity Commission (EEOC) regulation 29 CFR §1614.107(a)(2), in part, specifically requires dismissal of a claim that raises a matter that has not been brought to the attention of a counselor and is not like or related to a matter that has been brought to the attention of a counselor.  The requirements for deciding if a claim is considered like or related to the original complaint are 1) do the new claims add to or clarify the original complaint, and 2) could the new claims have reasonably been expected to have grown out of the initial complaint that was raised during counseling.  The events in paragraphs 6 and 7 were not raised during counseling; however, we believe the events are like or related and are inextricably intertwined with the events identified in the original complaint.  The events add to or clarify and could have grown out of the events identified in the original complaint.  The claims or events are additional incidents of harassment to support your claim of a hostile work environment.  Consequently, the claims or events outlined will be analyzed for acceptability purposes.

In your amendment request, it appears you are alleging your privacy was violated between approximately July 2009 and August 2009, when you overheard a clinical supervisor ask a co-worker what is the nature of your disability.  The Equal Employment Opportunity Commission has held that when an employee believes an agency has violated their rights under the Privacy Act, the proper remedy is provided under the Act.  Privacy violations cannot be cured through the EEO process *Bucci v. Secretary of Education, 01883733, 2089/C13 (988).*  If you wish to pursue this matter, you must contact the Privacy Act Officer located at the Robley Rex VA Medical Center in Louisville, KY.  Therefore, this claim or event as identified above is **DISMISSED** under the authority as stated in 29 CFR §1614.107 (a)(1).

---

[1] In the attachment to the formal complaint, the complainant included harassment as a claim.  The complainant also included reprisal (current EEO activity) as a basis for this complaint.

Page 3
Notice of Final Agency Decision
Karen Seng
Case No: 2004-0603-2013102286

8. Your complaint of discrimination raises the following claim:

**Whether complainant was subjected to harassment/hostile work environment based on race (White), age, disability, and reprisal (current EEO activity) as evidenced by the following events:**

**1.   In October 2008, Gaila Taylor (GT), the complainant's supervisor, disagreed with the complainant's selectee for a vacant position and attempted to make the selectee appear to be a troublemaker.**

**2.   In November 2008, GT questioned the complainant about some information the complainant gave to a new Administrative Assistant.**

**3.   In March 2009, GT asked complainant why she attended a staff meeting in which the social workers had been excused from attending; making the complainant feel GT did not want her at the meeting.**

**4.   On March 19, 2009, GT sent the complainant a memorandum criticizing the way the complainant processed referrals and accused her of working outside of her scope of practice.**

**5.   On March 19, 2009, Connie Paynter (CP), Chief, Social Work Service, never responded to the complainant's request to meet with her and discuss the processing of referrals.**

**6.   On June 11, 2009, GT banned the complainant and the Community Residential Care (CRC) staff from entering anything in any patient's chart or have an active referral for placement.**

**7.   On June 11, 2009, the complainant received a lower performance rating (fully successful) than her previous performance ratings.**

**8.   On June 11, 2009, the complainant's supervisor, Gail Taylor (GT), accused the complainant of a HIPAA violation.**

**9.   On August 1, 2009, the complainant's request for a reasonable accommodation was denied.**

**10.  Between approximately August 2009 and September 2009, the complainant's request that her CRC Coordinator position be reclassified and updated was denied.**

**11.  In or about September 2009, the complainant's request for reasonable accommodation was denied.**

**12.  On November 20, 2009, the complainant received the worst performance rating she has ever received and when she pointed out**

Page 4
Notice of Final Agency Decision
Karen Seng
Case No: 2004-0603-2013102286

some inaccuracies in the performance appraisal, GT refused to reconsider.

13. In December 2009, the complainant met with CP to request a change in her performance rating, which resulted in "no change."

14. In early 2010, the complainant was verbally counseled for not following the chain of command when she referred a veteran as a participant in a nationwide pilot program.

15. On January 27, 2010, GT denied the complainant's annual leave request.

16. On February 2, 2010, the complainant's request for her and her staff to attend the National CRC Social Skills Training was denied.

17. In March 2010, the complainant was assigned additional cases which had been assigned to another case manager.

18. On March 18, 2010, the complainant was notified she was to assume Jennifer Howerton's case manager duties temporarily.

19. On March 29, 2010, the complainant designated Vivian Turner (VT), Case Manager, to conduct Unit 7N's staff meetings and GT said the complainant had to conduct these meetings.

20. In May 2010, GT lied to the complainant about the complainant's travel days in an attempt to keep the complainant from going on travel on the date she wanted to travel.

21. On June 28, 2010 and September 30, 2010, the complainant was the only program coordinator who was excluded from the list of coverage as a supervisor.

22. In or about April 2011, VT yelled at the complainant, threw papers in the office, used violent language and gestures, and told the complainant, "There is something wrong with your brain. You don't think like everyone else."

23. On June 28, 2011, the complainant was excluded from a meeting held by CP that the complainant was bashed by some hostile co-workers.

24. On June 30, 2011, the complainant had a meeting with CP, who was "extremely hostile" to the complainant and yelled at her.

25. In July 2011, two of the complainant's co-workers were told to report to management what time the complainant arrived at work.

Page 5
Notice of Final Agency Decision
Karen Seng
Case No: 2004-0603-2013102286

26. On July 6, 2011, the complainant was excluded from acting in GT's position even though she was available.

27. On July 6, 2011, the complainant was given a document to sign that mandated she report to work on time and check in with her supervisor upon arrival.

28. On July 6, 2011, Dr. Kevin Pernicano, Acting Mental Health & Behavioral Science Service (MH&BSS) charged the complainant 15 minutes of AWOL for tardiness on July 5, 2011, and 30 minutes of AWOL on July 6, 2011.

29. On July 7, 2011, the complainant was accused of taking a 55-minute lunch break.

30. On July 11, 2011, the complainant's request for a reasonable accommodation was denied.

31. On or about July 14, 2011, the complainant's request for authorized absence to attend a job-related training was denied.

32. On July 14, 2011, CP told the complainant she would not approve any of her training requests as long as she was behind in her work.

33. On September 14, 2011, the complainant's request for a flex time tour of duty was denied.

34. On November 22, 2011, the complainant's job duty to make all admission decisions was removed from her without warning or discussion.

35. On November 22, 2011, GT sent out an e-mail message to MH&BSS staff indicating that she will be making all CRC decisions and CRC will only take referrals from Mental Health Service.3

36. On November 23, 2011, GT sent the complainant an e-mail message threatening to charge her with absence without leave (AWOL).

37. On November 30, 2011, GT sent the complainant an e-mail message that indicated, "Anytime you come or go after the start of your tour of duty, you need to call me first."

38. On December 12, 2011, the complainant was charged AWOL from 8:30 a.m. to 1:30 p.m. although she was on duty because she did not call GT.

39. On December 28, 2011, GT sent out a template on a pilot program, which the complainant implemented, but she did not include the complainant's input.

40. On December 29, 2011, GT rejected the complainant's input on the processing of consults, which sabotaged and prevented the complainant from performing her job.

41. On January 14, 2012, the complainant's request for a reasonable accommodation was denied.

42. On January 18, 2012, the complainant's request for a reasonable accommodation was denied.

43. On January 18, 2012, GT forwarded a letter the complainant sent to her to Human Resources and accused the complainant of being hostile.

44. On January 18, 2012 and January 14, 2013, the complainant's requests for a change in tour of duty were denied.

45. On January 25, 2012, the complainant was erroneously accused of being late.

46. On March 19, 2012, the complainant was accused of multiple untrue failures in the CRC program.

47. On March 19, 2012, GT sent the complainant an e-mail message directing her to stop all admissions to the CRC Program until further notice and immediately stop enrolling new homes to the program.

48. On March 19, 2012, GT directed the complainant to send any requests for her participation in any outside activities through Mental Health leadership before she committed to participation.

49. On March 28, 2012, the complainant was directed to stay out of a veteran's case because it was too complex for her and accused her of being incompetent and coercive.

50. On March 30, 2012, GT accused the complainant of not answering her cell phone or office phone.

51. On April 6, 2012, GT directed the complainant to give her the name of the Emergency Department nurse who met with the complainant to discuss CRC patients and patient alerts.

52. On April 12, 2012, GT's actions and lies destroyed the complainant's credibility as the CRC Program Coordinator.

Page 7
Notice of Final Agency Decision
Karen Seng
Case No: 2004-0603-2013102286

53. On April 26, 2012, the complainant learned the part-time Peer Specialist working in Mental Health Service was supposed to be working in the CRC Program.

54. From May 2012 to May 2013, the complainant was charged more leave than she used and charged tardy when she was at work on time.

55. On May 7, 2012, GT reassigned the complainant.

56. On May 10, 2012 through June 2012, GT entered false statements in patients' charts so the CRC Program would appear to be mismanaged by the complainant.

57. On June 1, 2012, after she was removed from her position as CRC Coordinator, the complainant was notified by the Board Chairman that she could no longer participate in the Board's meetings.

58. On June 4, 2012, the complainant learned her CRC Coordinator position was temporarily filled.

59. On June 5, 2012, CP told the complainant she was permanently reassigned as a Primary Mental Health Treatment Coordinator.

60. On June 7, 2012, CP took the complainant's office and desk keys from her, gave her a set time to pick up her personal belongings, and told her someone would be in the office to watch her remove her belongings.

61. From June 7, 2012 through May 7, 2013, the complainant was required to report her arrival at work to a management official every day.

62. On June 28, 2012, the complainant was not allowed to take her ergonomic chair which was provided for her back 10 years ago.

63. On June 29, 2012, the complainant was accused of mismanaging the CRC Program and the Chief of Staff never allowed the complainant to speak for the program and demonstrate the inaccuracies and misinformation she had been provided.

64. On June 29, 2012, the Chief of Staff confirmed that GT never provided the Chief of Staff with the information the complainant compiled on the cost savings the CRC Program had on the medical center.

65. On July 9, 2012, the complainant was asked biased questions which related to her during the interview for the CRC Program Coordinator position.

Page 8
Notice of Final Agency Decision
Karen Seng
Case No: 2004-0603-2013102286

66. On July 18, 2012, the complainant was removed from the National CRC Advisory Board.

67. On July 11, 2012, the complainant was not selected for the position of CRC Program Coordinator, Vacancy Announcement Number RY-12-NYG-682511-MHC.

68. On October 1, 2012, the complainant's request for a change in tour of duty was denied.

69. On November 14, 2012, due to a major fatality on the interstate, a lot of co-workers were late but the complainant was the only one charged AWOL.

70. From November 20, 2012 through May 2013, the complainant had to check in with GT or CP only when she reported to work.

71. Since November 28, 2012, GT failed to respond to the complainant's request for family medical leave.

72. Since January 13, 2013, the complainant has not received a response to her reasonable accommodation request.

73. On January 16, 2013, GT directed the complainant to enter inaccurate leave information and refused to resolve her concerns about her leave.

74. On March 16, 2013, the complainant's request for FMLA was denied and she was charged AWOL for the entire day.

75. On March 29, 2013, the complainant was charged absence without leave.

76. On April 11, 2013, GT falsely accused the complainant of filing a grievance concerning the denial of complainant's family medical leave request.

77. On May 7, 2013, the complainant was issued a proposed removal.[2]

78. On November 16, 2013, the complainant was charged AWOL although she had been on duty for two and one-half hours.

9. With regard to the events listed in paragraph 8, the applicable negotiated grievance procedure, American Federation of Government Employees (AFGE), Article 42, Section

---

[2] The complainant's proposed removal was sustained; therefore, the removal is not being merged with this complaint because the complainant filed a Union grievance on it first.

Page 9
Notice of Final Agency Decision
Karen Seng
Case No: 2004-0603-2013102286

3A, clearly states in part that allegations of discrimination may be raised under the statutory procedure or the negotiated grievance procedure but not both.

In this case, the complaint file reflects that you filed a Union grievance on April 23, 2012, August 1, 2012, and May 14, 2013[3]. The claims identified in the grievances are the same claims raised with the EEO counselor, in your formal complaint, and in your amendment request. Additionally, the complaint file also reflects that you filed your formal EEO complaint on July 3, 2013. This means the grievances were filed first.

EEO regulations require an agency to dismiss a complaint where the matter(s) has been previously raised in a negotiated grievance procedure that permits allegations of discrimination. Therefore, the claims in paragraph 8 are **DISMISSED** pursuant to 29 C.F.R. §1614.107(a)(4).

10. **Your complaint of discrimination is hereby <u>DISMISSED</u> in its entirety pursuant to 29 C.F.R. §1614.107(a)(4) for raising the same matters in a negotiated grievance procedure.** This constitutes the **<u>FINAL AGENCY DECISION</u>** on your complaint. If you are dissatisfied with this decision, an appeal may be filed in accordance with the attached appeal rights.

11. If you have any questions, Eleanor Kaye Wilson, Case Manager, at (501) 257-1589.

Sincerely,

*for Rodger P. Evans*

JAMES JINDRA
Regional EEO Officer

Enclosure:    Appeal Rights
              EEOC Form 573

cc:  Wayne L. Pfeffer (via electronic mail)
     Director (603/00)
     Robley Rex VA Medical Center
     800 Zorn Avenue
     Louisville, KY  40206

---

[3] According to the complaint file, a Final Agency Decision has been issued for each Union grievance filed.

## APPEAL RIGHTS

This final agency decision may be appealed within 30 calendar days of receipt of this decision. If you decide to appeal this decision to EEOC, you should use EEOC Form 573, a copy of which is enclosed. If you file an appeal beyond the above-noted time limit, you should provide the Commission with an explanation as to why the appeal should be accepted despite its untimeliness. If you cannot explain why timeliness should be excused, the Commission may dismiss the appeal as untimely.

| | |
|---|---|
| The appeal should be mailed to: | Equal Employment Opportunity Commission (EEOC)<br>Office of Federal Operations<br>P.O. Box 77960<br>Washington, DC  20013 |
| Or hand delivered to: | Equal Employment Opportunity Commission<br>Office of Federal Operations<br>Appellate Review Programs<br>131 M Street, NE, Suite 5SW12G<br>Washington, DC  20507 |
| Or sent by fax to: | (202) 663-7022 |

A copy of your appeal to the EEOC must also be sent to the VA Office of General Counsel at the following address. Statements or briefs in support of your appeal must be submitted to the EEOC within 30 calendar days of the filing of the appeal. Copies of any such statements or briefs, including any made on EEOC's "Appellant Docketing Statement," must also be sent to the VA Office of General Counsel. Your appeal, and any subsequently filed statement or brief, must contain a statement certifying the date and method by which copies of these documents were served on the VA Office of General Counsel.

| You must send a **copy** of your appeal to: | You must send a **copy** of your appeal to the Regional EEO Officer at: |
|---|---|
| Department of Veterans Affairs<br>Office of General Counsel (024)<br>810 Vermont Avenue, NW<br>Washington, DC  20420 | Department of Veterans Affairs<br>Office of Resolution Management (08E)<br>10701 East Boulevard<br>Cleveland, OH  44106 |

## RIGHT TO FILE A CIVIL ACTION

You have the right to file a civil action in an appropriate United States District Court. A civil action may be filed:

- Within 90 days of receipt of this final decision if no appeal to EEOC has been filed; or,
- If an appeal is filed with the EEOC, within 90 days after receipt of EEOC's final decision on your appeal; or,
- After 180 days from the date of filing an appeal with the EEOC if there has been no final decision by the EEOC.

If you file a civil action, the court may, at its discretion and upon your request, appoint an attorney to represent you in the matter, if you do not have or cannot afford one. The court may also authorize the civil action to begin without payment of fees, costs, or other security. The grant or denial of the request is within the sole discretion of the court. Filing a request for an attorney does not extend the time in which to file a civil action. Both the request and the civil action MUST BE FILED WITHIN 90 CALENDAR DAYS of the date of receipt of this final agency decision or, if this decision is appealed to the EEOC, within 90 CALENDAR DAYS of the date of receipt of the EEOC's final decision on the appeal.

Additionally, if you file a civil action, you must name **Eric K. Shinseki, Secretary of Veterans Affairs**, as the defendant. Failure to provide the name and official title of the head of the Department may result in the dismissal of your case.

The U.S. Equal Employment Opportunity Commission

NOTICE OF APPEAL/PETITION
TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
OFFICE OF FEDERAL OPERATIONS
P.O. Box 77960
Washington, DC 20013
Complainant Information: (Please Print or Type)

| | |
|---|---|
| Complainant's name (Last, First, M.I.): | Seng, Karen |
| Home/mailing address: | |
| City, State, ZIP Code: | Redacted |
| Daytime Telephone # (with area code): | |
| E-mail address (if any): | |

Attorney/Representative Information (if any):

| | |
|---|---|
| Attorney name: | N/A |
| Non-Attorney Representative name: | |
| Address: | |
| City, State, ZIP Code: | |
| Telephone number (if applicable): | |
| E-mail address (if any): | |

General Information:

| | |
|---|---|
| Name of the agency being charged with discrimination: | |
| Identify the Agency's complaint number: | 2004-0603-2013102286 |
| Location of the duty station or local facility in which the complaint arose: | |
| Has a final action been taken by the agency, an Arbitrator, FLRA, or MSPB on this complaint? | ___ Yes; Date Received _____ (Remember to attach a copy)<br>___ No<br>___ This appeal alleges a breach of settlement agreement |
| Has a complaint been filed on this same matter with the EEOC, <u>another</u> agency, or through any <u>other</u> administrative or collective bargaining procedures? | ___ No<br>___ Yes (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate) |
| Has a civil action (lawsuit) been filed in connection with this complaint? | ___ No<br>___ Yes (Attach a copy of the civil action filed) |

NOTICE: Please <u>attach a copy of the final decision or order</u> from which you are appealing. If a hearing was requested, please attach a copy of the agency's final order and a copy of the EEOC Administrative Judge's decision. Any comments or brief in support of this appeal MUST be filed with the EEOC and with the agency <u>within 30 days</u> of the date this appeal is filed. The date the appeal is filed is the date on which it is postmarked, hand delivered, or faxed to the EEOC at the address above.

| | |
|---|---|
| Signature of complainant or complainant's representative: | |
| Date: | |

EEOC Form 573 REV 1/01

CONFIDENTIAL DOCUMENT – GENERATED IN THE ORM COMPLAINT AUTOMATED TRACKING SYSTEM (CATS)

PRIVACY ACT STATEMENT
(This form is covered by the Privacy Act of 1974, Public Law 93-597.  Authority for requesting the personal data and the use thereof are given below.)

1. FORM NUMBER/TITLE/DATE: EEOC Form 573, Notice of Appeal/Petition, January 2001
2. AUTHORITY: 42 U.S.C. § 2000e-16
3. PRINCIPAL PURPOSE: The purpose of this questionnaire is to solicit information to enable the Commission to properly and efficiently adjudicate appeals filed by Federal employees, former Federal employees, and applicants for Federal employment.
4. ROUTINE USES: Information provided on this form will be used by Commission employees to determine: (a) the appropriate agency from which to request relevant files; (b) whether the appeal is timely; (c) whether the Commission has jurisdiction over the issue(s) raised in the appeal, and (d) generally, to assist the Commission in properly processing and deciding appeals.  Decisions of the Commission are final administrative decisions, and, as such, are available to the public under the provisions of the Freedom of Information Act.  Some information may also be used in depersonalized form as a database for statistical purposes.
5. WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION: Since your appeal is a voluntary action, you are not required to provide any personal information in connection with it.  However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

Send your appeal to:
The Equal Employment Opportunity Commission
Office of Federal Operations
P.O. Box 77960
Washington, D.C. 20013

This page was last modified on June 6, 2001.

CONFIDENTIAL DOCUMENT – GENERATED IN THE ORM COMPLAINT AUTOMATED TRACKING SYSTEM (CATS)

**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the
   Print button on the print dialog box that appears. Note: If your browser does not support this function
   select Print from the File menu to print the label.

2. **Fold the printed sheet containing the label at the line so that the entire shipping label is visible.
   Place the label on a single side of the package and cover it completely with clear plastic
   shipping tape. Do not cover any seams or closures on the package with the label.** Place the
   label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic
   shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **UPS locations include the UPS Store®, UPS drop boxes, UPS customer centers, authorized
   retail outlets and UPS drivers.**
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip
   packages.
   Hand the package to any UPS driver in your area.
   Take your package to any location of The UPS Store®, UPS Drop Box, UPS Customer Center, UPS
   Alliances (Office Depot® or Staples®) or Authorized Shipping Outlet near you. Items sent via UPS
   Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location
   nearest you, please visit the Resources area of CampusShip and select UPS Locations.

   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

FOLD HERE

